```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KHOLA MANZOOR,

                        Plaintiff,            MEMORANDUM
                                              AND ORDER
           -against-                          CV 20-5559 (ARL)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-----------------------------------------------------------------X
```
**LINDSAY, Magistrate Judge:**

Plaintiff, Khola Manzoor ("Plaintiff"), brought this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 et seq. (the "Act"), challenging a final determination by the Commissioner of the Social Security Administration ("SSA") that she was ineligible to receive Social Security disability insurance benefits. Before the Court are the parties' cross motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

## BACKGROUND

### I.     Procedural History

On May 4, 2018, Plaintiff filed an application for social security benefits, including a period of disability and all insurance benefits available under Title II of the Social Security Act (the "Act"). Transcript of the Record of Proceedings ("Tr.") at 15, 17. In her application, Plaintiff alleged that her disability, due to ischemic heart disease, degenerative disc disease of the lumbosacral spine, depression, and anxiety, began on January 1, 2012 and that her disability was continuing. *Id.* Plaintiff was last insured on December 31, 2015 and must establish that a disability commenced prior to that date. *Id*. at 17.

After conducting an initial review, on August 1, 2018, the SSA denied Plaintiff's application for benefits. *Id*. at 15. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on December 16, 2019. *Id*. at 15. On January 15, 2020, the ALJ issued a decision finding Plaintiff was not disabled. *Id*. at 26. Plaintiff requested a review of the ALJ's decision. *Id*. at 1. The Appeals Council denied Plaintiff's request for review on September 14, 2020, thus the ALJ's decision became the final decision of the Commissioner. *Id*.

Plaintiff commenced the instant action on November 16, 2020, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. The administrative record was filed on May 12, 2022. ECF No. 18. On June 2, 2023 the parties consented to the jurisdiction of this Court for all purposes. ECF No. 22. On September 15, 2023, Plaintiff moved for judgment on the pleadings. ECF No. 24. Defendant cross moved for judgment on the pleadings the same day. ECF No. 25.

**II.    Factual Background**

The following facts are drawn from the parties' Joint Stipulation of Facts. ECF No. 26.

**A. Non-Medical Evidence**

Plaintiff was 42 years old at the time of the December 16, 2019 hearing.[1] Tr. 25. She has a high school education and has not worked since 2012. *Id.* at 25, 55-57. She worked as a restaurant cook from 2008 through 2012. *Id.* at 57, 191. In a written function report, Plaintiff reported that she has difficulty with daily activities. *Id.* at 159. She can do limited cooking and cleaning and she relies on her husband for laundry. *Id.* at 161. She takes care of a 13-year-old child. *Id.* at 161. She experiences chest pain when standing for long periods. *Id.* at 162. Her

---

[1] Tr. are citations to the Administration Transcript found at ECF No. 18.

husband sometimes prepares meals. *Id.* at 162.  She has no hobbies. *Id.* at 165.  She goes outside for her psychiatric appointments twice a month.  *Id.* at 164.  She requires a cane for ambulation and balance.  *Id.* at 53.  Plaintiff can shower and dress, but she requires assistance. *Id.* at 54.  She is unable to lift, climb stairs, kneel, squat, or reach.  *Id.* at 165-166.  She can do very light walking for a short time.  *Id.* at 165.  She has difficulty concentrating, remembering, and finishing tasks. *Id.* at 166-167.  She could follow written and spoken instructions somewhat.  *Id.* at 167.  She can sit for up to 30 minutes, stand for 15 minutes, and walk approximately two or three blocks.  *Id.* at 51.  She can lift no more than a half-gallon of milk. *Id.* at 52.

      Plaintiff reported that she also suffers from anxiety and panic attacks, which are triggered by a situation, event, memory, or overexertion. *Id.* at 167.  A typical panic attack causes fear, rapid heartbeat, shortness of breath, the need to flee, and confusion.  *Id.* at 167.  According to Plaintiff, she was prescribed Clonazepam, Zoloft, and Quetiapine, and the medications make her sleep 14 hours a day.  *Id.* at  44.

      At the December 16, 2019 hearing, Plaintiff testified that she had back surgery at Elmhurst Hospital in January 2004.  *Id.* at 42.  Unfortunately, since that time her condition has worsened.  *Id.* at 42.  At the hearing she was wearing a neck brace due to a recent back surgery. *Id.* at 38.  According to Plaintiff, her physician recommended physical therapy, but she was unable to participate due to her depression.  *Id.*

      Plaintiff underwent a heart catheterization at Elijah Hospital in 2014.  *Id.* at 47.  She used an inhaler and was prescribed medication for asthma.  *Id.* at 48.  Plaintiff testified that during the relevant period (2012 to 2015), she typically slept all day. *Id.* at 49.  Plaintiff would sometimes take her daughter to the bus, but she primarily relied on her sister who lived next door. *Id.*  She sometimes cooked, folded laundry, bathed her younger daughter, dusted, and did "a little bit[of]

chores." *Id.* at 50-51. She testified that she currently takes Cymbalta, which makes her very tired. *Id.* at 50. Plaintiff relies on her husband for meals, cleaning, and shopping. *Id.* at 51. She is afraid of noisy places and does not go to weddings, cinemas, or stores. *Id.* at 51. Plaintiff traveled to Pakistan to visit family during the relevant period, but she used a wheelchair in the airport, and she rarely left the house. *Id.* at 52.

### B. Medical Evidence

The parties agree upon very little with respect to the evidence in the medical record. *See* ECF No. 26. According to Plaintiff, much of the medical evidence is illegible – citing Tr. 862-913, 935-976. Defendant, however, disputes Plaintiff's conclusion that the medical records are illegible and cites numerous pages from the transcript describing Plaintiff's mental status, reaction to medications and anxiety. *See* ECF No. 26 ¶¶ 21-91.

The parties agree that the following medical evidence was properly part of the record before the ALJ. ECF No. 26. X-rays and an MRI of the lumbar spine in 2003 revealed degenerative changes at the L4/L5 and LS/S1 levels with diffuse central disc bulging, a superimposed focal central disc herniation at the LS/S1 level, and neural foraminal narrowing, slightly greater on the right side. *Id.* at 348.

On March 23, 2014, Plaintiff was taken to the emergency room for chest pains. *Id.* at 1050. She was admitted overnight for monitoring and discharged with a diagnosis of severe anxiety attack. *Id.* Plaintiff presented to the emergency room again on October 1, 2014 with chest pain. Her ejection fraction was 66%. *Id.* at 370. Plaintiff was hospitalized in November 2014 for acute coronary syndrome. *Id.* at 387. She was observed as having no cognitive difficulties. *Id.* at 386. She walked independently, had no difficulty climbing stairs, bathed and dressed independently, and was described as having no problems doing errands alone, such as

shopping or visiting a doctor's office. *Id.* at 387. Plaintiff reported that she walked regularly and had lost 25 pounds. *Id.* at 388.

In a letter dated December 5, 2019, Plaintiff's daughter, who was a medical student at Cornell Medical College, described her mother's impairments and limitations. She said the letter was based on her "medical education, clinical knowledge, and practice." *Id.* at 197. She reported choosing to live at home while she was an undergraduate because her mother was constantly fatigued and slept up to 14 hours a day. *Id.* She said that her mother was "constantly anxious and depressed. She was sleeping more, eating more, more hopeless, constantly worried, and felt guilty for not working" and she did all of the shopping and cleaning. *Id.*

According to Defendant, the ALJ also considered that "therapy records show that Plaintiff was regularly observed as being only mildly anxious, and she was verbal and cooperative with appropriate affect and euthymic mood. Tr. 864, 866, 874, 876, 878, 880, 890, 894, 896, 908, 936, 940, 944, 948, 952, 956, 960, 964, 968, 980, 984, 988, 992. Similarly, psychiatric treatment visits showed that Plaintiff was alert and oriented with normal mood, affect, and thought content; intact memory and fund of knowledge; and fair attention, concentration, judgment, and insight. Tr. 868, 869-870, 873, 882-89, 892-93, 901-02, 906-07, 912-13, 942-43, 946-47, 950-51, 954-55, 958-59, 962-63, 970-73, 978-79, 982-83, 986-87, 990-91. Plaintiff was described as being stable and having good response to treatment with symptoms that were in total or partial remission with medication. Tr. 864, 866, 871, 874, 876, 878, 880, 883, 885, 887, 889-890, 893 94, 896, 901, 904, 907-08, 910, 913, 936, 940, 944, 948, 956, 960, 964, 966, 968, 971-72, 980, 988. Plaintiff often reported that she was doing well or "ok," and she denied being depressed during many mental health treatment visits. Tr. 864, 866, 874, 876, 878, 880, 891, 894, 898, 904, 908, 911, 942, 944, 946, 952, 956, 964, 974, 986, 988,

990, 992. Plaintiff's treatment notes consistently indicated that she denied side effects (including sedation and dizziness) from medications. Tr. 44, 866, 869-870, 873 74, 876, 878, 880, 882, 884, 886, 888, 890, 892, 894, 896, 898, 902, 904, 906, 908, 910, 912, 936, 940, 943-44, 948, 951-52, 956, 960, 963-64, 966, 968, 971, 973, 979-980, 984, 988.

## DISCUSSION

### I. Standard of Review

#### A. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c) should be granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter of law." *Rojas v. Berryhill,* 368 F. Supp. 3d 668, 669 (S.D.N.Y. 2019*)* (citing *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995)). "The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6)." *Id.* The Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g**).**

#### B. Review of the ALJ's Decision

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. Nov. 16, 1998) (citing *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)); *see also Provisero* v. *Colvin,* No. 14-CV-1830, 2016 WL 4186980, at *9 (E.D.N.Y. Aug. 8, 2016); *Smith* v. *Colvin,* No. 14-CV-5868, 2016 WL

6

5395841, at *13 (E.D.N.Y. Sep. 27, 2016). Thus, although the reviewing court is obliged to "examine the entire record, weighing the evidence on both sides to ensure that the claim has been fairly evaluated," *Nascimento v. Colvin,* 90 F. Supp. 3d 47, 51 (E.D.N.Y. 2015), "the Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Provisero,* 2016 WL 4186980, at *9 (quoting *Koffsky v. Apfel,* 26 F. Supp. 475, 478 (E.D.N.Y. Nov. 16, 1998)).

### C. Eligibility for Disability Benefits

To be eligible for disability benefits under the Act, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see Burgess v. Astrue,* 537 F.3d 117, 119 (2d Cir. 2008); *Wider v. Colvin*, 245 F. Supp. 3d 381, 387 (E.D.N.Y. 2017); *Nascimento,* 90 F. Supp. 3d at 51. The Act further states that this impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see Shaw v. Chater,* 221 F.3d 126, 131-32 (2d Cir. 2000); *Nascimento,* 90 F. Supp. 3d at 51; *Marinello v. Coom'r of Soc. Sec.,* 98 F. Supp. 3d 588, 592-93 (E.D.N.Y. 2015).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant can perform.

*Telavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012). The claimant bears the burden of proof at steps one through four of the sequential inquiry, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Id.*; *Nascimento,* 90 F. Supp. 3d at 51.

## II. Analysis

### A. The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2012. *Id*. at 17. At step two, the ALJ determined that the Plaintiff's ischemic heart disease, degenerative disc disease of the lumbosacral spine, depression and anxiety qualified as severe impairments pursuant to 20 C.F.R. 404.1520(c). The ALJ noted that Plaintiff's hypertension, hypothyroidism diabetes and acid reflux did not qualify as severe impairments. *Id*. at 18. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R §§ 404.152(d), 404.1525 and 404.1526). *Id*. at 18-19. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) except that, in addition to normal breaks for 90% of the work day, she can perform

8

simple, routine, repetitive tasks and positions that require interaction with supervisors, coworkers and the public frequently and that require dealing with changes in routine work settings frequently. *Id.* at 21. At step four, the ALJ concluded that due to her impairments, Plaintiff could not perform her past work. *Id.* at 24. At step five, the ALJ found that the Plaintiff was capable of performing other jobs in the local and national economy, including sorter, addresser, and stuffer. As a result, the ALJ found Plaintiff was not disabled under the Act. *Id*. at 26.

The ALJ concluded that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. The claimant's testimony about her signs, symptoms and limitations during the period in question is not well-supported by clinical or diagnostic findings and her characterization of pain and symptoms is not consistent with her treatment records. Her treatment is infrequent and there are wide gaps in treatment. Furthermore, no medical opinion states that the claimant was unable to work during the period in question. The medical record does not show any side-effects of medications. Her activities of daily living are inconsistent with her complaints. These factors are inconsistent with the claimant's allegations.

Tr. at 24. While Plaintiff argues that her treatment notes are largely illegible, the ALJ points to the following statements from the record:

> Plaintiff was regularly observed as being only mildly anxious, and she was verbal and cooperative with appropriate affect and euthymic mood (Tr. 864, 866, 874, 876, 878, 880, 890, 894, 896, 908, 936, 940, 944, 948, 952, 956, 960, 964, 968, 980, 984, 988, 992). Similarly, psychiatric treatment visits showed that Plaintiff was alert and oriented with normal mood, affect, and thought content; intact memory and fund of knowledge; and fair attention, concentration, judgment, and insight (Tr. 868, 869-870, 873, 882-89, 892-93, 901-02, 906-07, 912-13, 942-43, 946-47, 950-51, 954-55, 958 59, 962-63, 970-73, 978-79, 982-83, 986-87, 990-91). Plaintiff was described as being stable and having good response to treatment with symptoms that were in total or partial remission with medication (Tr. 864, 866, 871, 874, 876, 878, 880, 883, 885, 887, 889-890, 893 94, 896, 901, 904, 907-08, 910, 913, 936, 940, 944, 948, 956, 960, 964, 966, 968, 971-72, 980, 988). Plaintiff often reported that she was doing well or "ok," and she denied being depressed during many mental health treatment visits (Tr. 864, 866, 874, 876, 878, 880, 891, 894, 898, 904, 908, 911, 942, 944, 946, 952, 956, 964, 974, 986, 988, 990, 992).

> Plaintiff's treatment notes consistently indicated that she denied side effects (including sedation and dizziness) from medications (Tr. 44, 866, 869-870, 873 74, 876, 878, 880, 882, 884, 886, 888, 890, 892, 894, 896, 898, 902, 904, 906, 908, 910, 912, 936, 940, 943-44, 948, 951-52, 956, 960, 963-64, 966, 968, 971, 973, 979-980, 984, 988). The ALJ also notes that "the medical evidence of record reflects documentation of failure to follow treatment."

Tr. at 24.

Plaintiff moves for judgement on the pleadings, arguing that the ALJ failed to properly develop the record with respect to Plaintiff's severe anxiety and depression. ECF No. 24 at 11-13. Defendant cross-moves for judgement on the pleadings, arguing that Plaintiff does not allege that any relevant evidence was missing from the administrative and that "[t]he administrative record before the ALJ contained Plaintiff's relevant mental health treatment records. Portions of the mental health treatment records were handwritten and sometimes illegible (Tr. 864-913, 936-1086). However, significant portions of the mental health records contained legible information, which the ALJ properly considered in assessing Plaintiff's RFC (Tr. 21-23)."

### B. Evaluation of the Medical Evidence

Upon careful review of the administrative record and the ALJ's decision, the undersigned finds that the ALJ's decision is properly supported by the medical evidence.

Generally, a claimant bears the burden to prove she is disabled. 20 C.F.R. § 404.1512(a)(1). In this action, Plaintiff has failed to offer a medical opinion from any of her providers establishing her disability and is relying upon treatment notes. Plaintiff argues that the treatment notes provided by Plaintiff's physician are illegible and the ALJ was under a duty to further develop the record to correct this deficiency. Pl. Mem. at 11-13. However, Plaintiff has failed to identify any obvious gaps in her treatment history. "[W]here there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v.*

*Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir.1999) (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)); *see also Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (ALJ not required to develop record where evidence presented is adequate for the ALJ to make a determination).

Moreover, at the hearing, Plaintiff did not request assistance in obtaining additional records or express any objection to the evidence that had been provided to the ALJ. *See* Tr. at 36-37 (counsel was asked if she had reviewed the evidence and if she had any objection to it, counsel responded that she had reviewed the evidence and had no objection); *see also Clarke v. Comm'r of Soc. Sec.,* No. 19-CV-7213 (BCM), 2021 U.S. Dist. LEXIS 113808, 2021 WL 2481909, at *17 (S.D.N.Y. June 16, 2021) (rejecting argument that remand was warranted due to lack of records where the ALJ asked plaintiff's representative about potentially missing records and held record open for her to submit them, and no additional submissions were received); *Lodge v. Comm'r of Soc. Sec.,* No. 12 Civ. 4651 (BMC), 2013 U.S. Dist. LEXIS 101374, 2013 WL 3778812, at *4 (E.D.N.Y. July 19, 2013) (plaintiff was not entitled to a supplemental hearing when he "never asked the ALJ for further development of the record, and has barely alluded in his brief in this case to what further development efforts the ALJ should have undertaken," and when his request was essentially an attempt to obtain a second opinion because he disagreed with a prior evaluation made by a physician).

Plaintiff also argues that "without a supporting medical opinion of [Plaintiff's] functional limitations, the ALJ's RFC determination that [Plaintiff] was capable of sedentary work 'constituted an impermissible interpretation of bare medical findings' and is not supported by substantial evidence." Pl. Mem. at 13. However, "Plaintiff bears the burden of proving her limitations." *Iris v. Saul,* No. 1:19-CV-1165 (MAD), 2020 U.S. Dist. LEXIS 83724, 2020 WL 2475824 (N.D.N.Y. May 13, 2020) (citing *Debra M. v. Berryhill*, No. 5:17-cv-1359, 2019 U.S.

11

Dist. LEXIS 54315, 2019 WL 2420327, *9 (N.D.N.Y. Feb. 4, 2019) ("Clearly Plaintiff bears the burden of proving disability").  Indeed, "[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof . . . can constitute substantial evidence supporting a denial of benefits." *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) (summary order); *see Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (rejecting plaintiff's argument that RFC was deficient where plaintiff "had a duty to prove a more restrictive RFC, and failed to do so").

"Further, the lack of a medical opinion weighs against a plaintiff's claims, not the ALJ's decision."  *Iris v. Saul,* No. 1:19-CV-1165 (MAD), 2020 U.S. Dist. LEXIS 83724, 2020 WL 2475824 (N.D.N.Y. May 13, 2020)  (citing *Barry v. Colvin*, 606 Fed. Appx. 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits")); *see also Cook v. Comm'r of Soc. Sec.,* 818 F. App'x 108, 109-10 (2d Cir. 2020) ("although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity").

Generally, it is the responsibility of the ALJ to support the residual functional capacity assessment of a claimant with a treating physician's function-by-function analysis. *Leonard v. Colvin,* 2014 U.S. Dist. LEXIS 44982, 2014 WL 1338813, at *3 (W.D.N.Y. Mar. 31, 2014) (citing *Hurd v. Astrue*, 2013 U.S. Dist. LEXIS 11155, 2013 WL 321573, at *3 (W.D.N.Y. Jan. 28, 2013)).  However, in instances such as here, where the claimant's treating physicians do not provide specific function-by-function assessments of the claimant's residual functional capacity,

12

but the medical record is extensive enough to support an informed residual functional capacity finding by the ALJ, remand is not appropriate. *Tankisi v. Commissioner of Social Security*, 521 F. App'x. 29, 34 (2d Cir. 2013) (citing *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012); *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)); *see also Jones v. Berryhill*, No. 1:17-CV-00001-RJA, 2019 U.S. Dist. LEXIS 87881 (W.D.N.Y. May 24, 2019). Indeed, an ALJ is not "required to further develop the record where the evidence present is sufficient for the ALJ to make a determination." *Lindsay B. v. Comm'r of Soc. Sec.*, No. 20-CV-00897, 2021 U.S. Dist. LEXIS 203422, 2021 WL 4912588, at *4 (W.D.N.Y. Oct. 21, 2021) (citing *John W. v. Saul*, No. 20-CV-376, 2022 U.S. Dist. LEXIS 139701, 2022 WL 3142083, at *4 (W.D.N.Y. Aug. 5, 2022) ("The ALJ is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" (alteration in original); *Monroe v. Comm'r*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order) (the ALJ could rely on voluminous treatment notes that provided medical assessments of Plaintiff's characteristics relevant to her ability to work, as well as her activities of daily living, to formulate the RFC without the benefit of a medical opinion where the record contained sufficient evidence from which an ALJ could assess the RFC)).

Plaintiff testified that she is unable to lift, climb stairs, kneel, squat, or reach. *Id.* at 165-166 but she can do very light walking for a short time. *Id.* at 165. She has difficulty concentrating, remembering, and finishing tasks, *Id.* at 166-167, but she could follow written and spoken instructions somewhat. *Id.* at 167. She can sit for up to 30 minutes, stand for 15 minutes, and walk approximately two or three blocks. *Id.* at 51. She can lift no more than a half-gallon of milk. *Id.* at 52. There is no other evidence in the record serves to contradict Plaintiff's testimony, or the ALJ's determination that Plaintiff is able to perform work at the sedentary level.

13

(R. 22). Additional evidence considered by the ALJ included essentially intact mental status exams and no complaints of side effects from medication. Tr. 44, 866, 868, 869-870, 873, 874, 876, 878, 880, 882, 884, 886, 888-890, 892-894, 896, 898, 901-902, 904, 906- 908, 910, 912-13 936, 940, 942-44, 946-48, 950-52, 954-56, 958-60, 962-64, 966, 968, 970-73, 978-980, 982-84, 986-88, 990-91.

"In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *See Zacharopoulos v. Saul*, No. 19-5075 (GRB), 2021 WL 235630 (E.D.N.Y. Jan. 25, 2021) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Here, the ALJ recited the objective medical evidence offered by Plaintiff, noting that "[s]he also had some treatment for anxiety/depression but mental status examinations are uniformly normal including mental status examinations shortly after the date that she was last insured"[2] but rejected Plaintiff's subjective evidence of a disability pointing out that

> the claimant's reported daily activities are greater than one might expect, given her allegations of total disability. For example, the claimant, when asked about her typical day, testified that she takes care of her young daughter. In addition, she traveled extensively to Pakistan during the period in question. In a written statement dated June 11, 2018, the claimant stated that she does some cooking and cleaning and that she takes care of her 13-year-old child. She has no problems with self-care, needs no help or reminders to take care of personal needs and grooming, and shops in stores for groceries, personal needs and for her child. She socializes with relatives by phone. She indicated having concentration problems and, to some extent, having a limitation of ability to follow instructions, but she denied any problems getting along with family, friends, bosses or others. When asked about her physical limitations, she indicated that she could only engage in "light walking" and cannot, inter alia, lift (because of back pain), kneel, squat or climb stairs, but she indicated no limitations of sitting and stated that standing was "ok."

---

[2] The ALJ also noted that "[o]n and prior to the date that the claimant was last insured, the claimant had complaints of back pain. X-rays and a MRI scan of the lumbar spine in 2003 show some degenerative changes, but hip, lumbar spine, sacrum and coccyx X-rays in January 2004 were normal; chest pain was diagnosed with a reversible area of ischemia; and prior pulmonary function tests indicate some shortness of breath on exertion with an unclear diagnosis. (See Exhibits 12F – 18F). Her ejection fraction was 66% on October 1, 2014 (Exhibit 15F, page 1), which is normal." Tr. at 22.

Tr. at 23. Additionally, the ALJ rejected a statement by one Plaintiff's medical providers after the relevant period indicating Plaintiff was "having difficulty working" because it was "unattended by symptoms, signs or limitations, provides no information as to duration, is not well supported by treatment records and provides no basis for relating the finding of disability by Ms. DeSetto back to the period in question." Tr. at 22. In short, the Court finds the ALJ weighed all of the evidence available to make an RFC finding that was consistent with the record as a whole.

"Plaintiff's arguments are an attempt to shift the burden of proof by asserting that the ALJ did not develop the record. However, plaintiff's medical records just do not establish what limitations would prevent her from working." *Lindsay B. v. Comm'r of Soc. Sec.*, No. 20-CV-00897, 2021 U.S. Dist. LEXIS 203422, 2021 WL 4912588, at *4 (W.D.N.Y. Oct. 21, 2021) (citing *Reynolds v. Colvin*, 570 Fed. App'x 45, 47 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Iris v. Saul,* No. 1:19-CV-1165 (MAD), 2020 U.S. Dist. LEXIS 83724, 2020 WL 2475824 (N.D.N.Y. May 13, 2020) ("Here, Plaintiffs argument is nothing other than 'improper-burden shifting' because she '[wa]s unable to point to evidence that supports a finding that she has greater limitations than the ones found by the ALJ.") (quoting *Jones v. Colvin*, No. 6:16-cv-44, 2017 U.S. Dist. LEXIS 109393, 2017 WL 3016839, *4 (N.D.N.Y. July 14, 2017); *see also Smith v. Berryhill*, 740 Fed. Appx. 721, 726 (2d Cir. 2018) (holding that the plaintiff "had a duty to prove a more restrictive RFC, and failed to do so"); *Dumas v. Schweiker*, 712 F.2d at 1553 (2d Cir. 1983)("[t]he [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say.")).

For all of these reasons, the Court grants Defendant's motion for judgment on the pleadings. The Clerk of Court is directed to close the case.

Dated: Central Islip, New York
March 22, 2024

SO ORDERED:

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge